IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MELISSA KOTHE and DENA KNAPP,** )
)
          **Plaintiffs,** )
)
v. )
)   No. 06-2097-CM
)
**AIMCO, CENTRAL PARK TOWERS II,** )
**L.P., and EMERSON MANAGEMENT** )
**SOLUTIONS, LLC,** )
)
          **Defendants.** )
)

## MEMORANDUM AND ORDER

Plaintiffs Melissa Kothe and Dena Knapp bring this civil rights action against defendants AIMCO, Central Park Towers II, L.P., and Emerson Management Solutions, LLC. The case is before the court on Defendant Central Park Towers II, L.P.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 22), Motion of Defendant AIMCO to Compel Arbitration and to Dismiss or, Alternatively, to Stay Proceedings Pending Arbitration (Doc. 25), and defendant Emerson Management Solutions LLC's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 28). Because the court finds an enforceable arbitration agreement, defendant AIMCO's Motion to Compel Arbitration is granted. This case is stayed pending arbitration, rendering the remaining motions moot.

**I.    Background**

Plaintiffs filed this case on March 15, 2006, but filed an amended complaint on October 5, 2006. The amended complaint alleges that plaintiffs are Missouri citizens who are former employees of defendant AIMCO, which is a corporation licensed to do business in Kansas, but

incorporated in Delaware.  The other defendants are described as: "Defendant Central Park Towers II, L.P. is a wholly owned subsidiary of AIMCO"; "Defendant Emerson Management Solutions, LLC is an agent of AIMCO and currently manages the property known as Central Park Towers." Plaintiffs allege several civil rights violations under Title VII of the Civil Rights Act of 1988, 42 U.S.C. § 2000d, 42 U.S.C. § 2000e, and the Kansas Wage Payment Act, in addition to the torts of negligent hiring, negligent retention, negligent supervision, and assault.  Plaintiffs also seek injunctive and declaratory relief.  Plaintiffs describe "the central issue in the instant case" as "active members of the Ku Klux Klan in HUD financed housing act[ed] in a manner to deny the rights of the tenants, assault[ed] tenants, employees and attempt[ed] to recruit new Klan members in property owned by Defendant [Central Park Towers II, L.P.]; managed by Defendant AIMCO and subsequently managed by Defendant Emerson Management Solutions, LLC."

Defendant AIMCO acknowledges that plaintiffs are former employees, but claims that both plaintiffs entered into arbitration agreements with defendant AIMCO.  According to the documents provided by defendant AIMCO, these agreements provide:

> Any claim [which is defined as 'any dispute, matter, controversy, demand, action, cause of action, question or claim of any kind or nature whatsoever relating to, arising out of, in connection with, or involving employment, termination of employment, or the Employee Handbook, the policies contained therein, or the interpretation thereof, whether for damages or for injuctive or other legal, equitable or other relief, whether arising under federal, state, local, common, statutory, regulatory, constitutional, or other law, including without limitation, claims of discrimination, retaliation, or harassment on the basis of age, race, sex, disability, or other protected status (such as Title VII of the Civil Rights Act, Age Discrimination in Employment Act, Americans with Disabilities Act, and similar claims), and claims relating to termination, performance evaluation, promotion or transfer or the lack thereof, benefits, wages and/or compensation'] between an employee and Company which cannot be resolved through the Company's internal procedures . . . shall be settled by arbitration administered by the American Arbitration Association (the 'AAA') under its National Rules for the Resolution of Employment Disputes and Due Process Protocol.

-3-

## II.     Legal Standards

The Federal Arbitration Act ("FAA") ensures that written arbitration agreements in maritime transactions and transactions involving interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Federal policy favors arbitration agreements and requires that the court "rigorously enforce" them. *Shearson/Am. Exp., Inc., v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)); *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

> Section 3 of the FAA states:
>
>> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Whether the parties agreed to arbitrate a dispute is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986). Arbitration is a matter of contract between the parties. A party can be made to arbitrate only those disputes which it has agreed to submit to arbitration. *Id.* at 648*; see also Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).

When a contract contains an arbitration provision, there is a presumption of arbitrability. *See AT&T*, 475 U.S. at 650. A request to arbitrate a dispute should not be denied unless the arbitration

clause does not cover the dispute at issue. Any doubts should be resolved in favor of coverage under the arbitration clause. *Id.* (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)); *see also Denhardt v. Trailways, Inc.*, 767 F.2d 687, 689 (10th Cir. 1985). Moreover, when a contract contains a broad arbitration clause, with no express provision excluding a particular issue from arbitration, there is a strong presumption in favor of issues being subject to arbitration. *Id.*; *see also Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir. 2000). A party can overcome this presumption by showing the agreement to arbitrate is not part of a contract involving interstate commerce or is revocable on grounds that exist at law or equity for revocation of any contract. *See* 9 U.S.C. § 2; *see also Avedon Eng'g*, 126 F.3d at 1286.[1]

### III.    Discussion

Defendant AIMCO argues that because plaintiffs signed valid and enforceable arbitration agreements that cover the present claims, the FAA and the "federal policy favoring arbitration" require arbitration. Plaintiffs do not dispute that they signed an agreement to arbitrate claims against defendant AIMCO. Instead, plaintiffs contend that the claimed involvement of the Ku Klux Klan creates such strong public policy implications that this case is beyond the scope of an arbitration agreement. In support of this argument, plaintiffs cite *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 673 (11th Cir. 1988), for the proposition that this court "has the duty to overturn Arbitration Awards that are against public policy." Additionally, plaintiffs contend that "there are aspects of the case that are outside the purported binding arbitration agreement—injunctive or equitable relief is specifically excluded by the terms of the agreement."

---

[1] Section 1 of the FAA states that it does not apply to "contracts of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." However, this exception only exempts contracts of employment of transportation workers. *Circuit City Stores, Inc.*, 532 U.S. at 105.

Plaintiffs' arguments fail for several reasons.  First, plaintiffs do not rebut the presumption that their claims are covered by the arbitration clause.  Although plaintiffs are correct that the arbitration clause excludes some forms of equitable or injunctive relief, plaintiffs omit the remainder of this exception, which requires that seeking such relief is premised on protecting or preventing irreparable harm and injury.  Plaintiffs do not contend that they are protecting or preventing any irreparable harm and injury.  Plaintiffs also ignore the other statements in the same clause which include any "cause of action . . . or claim . . . whether for damages or for injunctive or other legal, equitable or other relief."  Plaintiffs made no effort to distinguish their claims from this inclusive statement.

Second, plaintiffs provide no legal support for their proposition that the public policy implications of this case outweigh the presumption of arbitrability.  Plaintiffs' reference to *Delta Air Lines* only allows for federal courts to refuse to enforce an arbitration award that is against public policy.  For this logic to apply, the court would have to assume that compelling arbitration is tantamount to ordering an arbitration award that is against public policy.  The court will not make that assumption.  Moreover, this district has noted that "[t]he Supreme Court permits compelled arbitration for alleged violations of federal employment statutes where a valid employment contract so requires."  *Moncrief v. Terminix Int'l Co. Ltd. P'ship*, No. 06-1047-JTM, 2006 WL 1764080, at *2 (D. Kan. June 27, 2006) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991)).  Thus, arbitration can be compelled for claims under the Age Discrimination in Employment Act, the Americans with Disabilities Act, and Title VII.  *Id.*  The majority of cases under each of these statutes will involve important public policy considerations.  Nothing in plaintiffs' case requires a different approach.

Because plaintiff has failed to rebut the presumption of arbitrability, defendant AIMCO's

motion to compel (Doc. 25) is granted.  This case is stayed in whole pending the resolution of the arbitration of plaintiffs' claims.

### IV.     Motions to Dismiss

Defendants Emerson Management Solution LLC and Central Park Towers II, L.P. filed separate motions to dismiss plaintiffs' First Amended Complaint.  Plaintiff responded to both motions jointly, requesting that either the court deny the motions or "in the alternative, permit a brief period for the Plaintiffs to amend their complaint."  Because this case is stayed pending resolution of the arbitration of plaintiffs' claims, these motions are denied without prejudice.  Defendants may refile their motions after the court lifts the stay.

**IT IS THEREFORE ORDERED** that Motion of Defendant AIMCO to Compel Arbitration and to Dismiss or, Alternatively, to Stay Proceedings Pending Arbitration (Doc. 25) is granted.  This case is stayed pending resolution of the arbitration of plaintiffs' claims.

**IT IS FURTHER ORDERED** that Defendant Central Park Towers II, L.P.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 22) is denied without prejudice as moot.

**IT IS FURTHER ORDERED** that defendant Emerson Management Solutions LLC's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 28) is denied without prejudice as moot.

Dated this 6th day of  July 2007, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**